```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

**JOHN RUGER,**

        Plaintiff,

   vs.                                      Civil Action 2:11-CV-969
                                                Judge Watson
                                                Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.


**REPORT AND RECOMMENDATION**

This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383 for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 13, and the Commissioner's *Memorandum in Opposition*, Doc. No. 14.

**Background**

Plaintiff John Ruger filed his current application for benefits on June 30, 2009, alleging that he is disabled as a result of injuries to his neck and shoulder.[1] The application was denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.

On May 31, 2011, plaintiff, represented by counsel, participated

---

[1] Plaintiff initially alleged a disability onset date of February 2, 2008 but, at the administrative hearing, he amended that date to June 22, 2009.

in and testified at a video hearing, as did Lisa J. Goudy, who testified as a vocational expert. In a decision dated June 10, 2011, the administrative law judge found that plaintiff is not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 14, 2011.

Plaintiff was 50 years old at the time he applied for benefits. He has a 9th grade education and prior relevant work experience as a logger, which required heavy exertion, but which involved no skills that would be transferrable to light jobs. *See PAGEID* 107. Under the Medical-Vocational Guidelines, if plaintiff's impairments limit him to sedentary exertion, he would be characterized as disabled. *See* Rule 201.10, Pt. 404, Subpt. P., App. 2.

**Medical Evidence**

In May 2006, plaintiff suffered a work-related grade I open left tibia/fibula fracture for which he underwent open reduction internal fixation. In 2007, he underwent two procedures to remove the screws because of pain. *PAGEID* 368-69. In June 2007, Jeffrey McElroy, M.D., plaintiff's treating orthopedic surgeon, released plaintiff to "return to work in a protected environment." *PAGEID* 366.

In December 2008, plaintiff underwent a consultative examination by William N. Grant, M.D., in connection with his worker's compensation claim for this work-related leg injury. Dr. Grant noted that plaintiff walked with an obvious limp; he diagnosed a mal-alignment of the tibial shaft. Dr. Grant allocated a 12% whole person impairment to the mal-alignment, a 5% whole person impairment to the

2

failed surgery for the repair of the leg fracture and a 3% whole person impairment for plaintiff's pain.  *PAGEID* 616-17.

Plaintiff was involved in a motor vehicle accident in February 2008.  At the emergency room, plaintiff complained of pain upon movement of the neck.  *PAGEID* 464.  A CT scan of the cervical spine show a nondisplaced facture at the transverse process of C6 on the left with a superior endplate fracture of C7.  *PAGEID* 465.  Houman Khosrovi, M.D., a neurosurgeon, prescribed a hard collar "for at least 3 months until the fractures are healed."  *Id.*

A February 2008 MRI of the left shoulder, ordered by Dr. Khosrovi because of plaintiff's complaints of left shoulder pain, showed mild subacromial bursitis and bursitis/tendinitis with mild tendinopathy of rotator cuff tendons without full thickness tears or retraction. *PAGEID* 456.  Dr. Khosrovi characterized the condition as "mild" and prescribed no treatment for the condition.  *See PAGEID* 486, 488.

In April 2008 Dr. Khosrovi ordered an MRI of the cervical spine because of plaintiff's complaints of pain radiating into the left arm with numbness of the fingers of the left hand.  *See PAGEID* 501.  That MRI revealed, in addition to the fractures previously seen, a left foraminal disc hernation at C6-C7 with severe left foraminal stenosis. *Id*.

In September 2008, Dr. Khosrovi performed a C7 corpectomy, C6-T1 titanium expandable cage, C6-C7 autograft/allograft fusion, C6 to T1 anterior cervical plating with intraoperative SSEP monitoring.  *See PAGEID* 551. Immediately after that procedure, plaintiff was restricted to lifting no more than 10 pounds, and no pushing, pulling, bending or twisting.  *PAGEID* 542, 544. By November 2008, however, Dr. Khosrovi

3

had raised that restriction to "no lifting greater than 20 lbs;" plaintiff was also directed to use a soft cervical collar. *PAGEID* 546.

In a January 2009 follow-up visit, plaintiff complained of continuing left shoulder pain, numbness in the left arm radiating to the fingers and intermittent neck pain. *PAGEID* 551. An MRI showed no further neurosurgical pathology. *PAGEID* 553. On clinical examination, the left upper extremity was nontender to palpation; there was no edema; range of motion was normal; there was no crepitus; there was no pain with motion. *Id.* Strength in the left upper extremity was normal except 4+/5 in the deltoid and thumb opposition. *Id.* Motor function of the left upper extremity was normal. *Id.* Sensation to light touch was intact in all four extremities. *Id.*

In July 2009, plaintiff saw Anurag Sahu, M.D., a cardiologist, for evaluation following an abnormal EKG and complaints of dyspnea. Testing disclosed sinus tachycardia and nonspecific ST-T wave abnormalities. *PAGEID* 564. However, a 2D echocardiogram showed normal LV systolic and diastolic function, without significant valvular disease, and a nuclear stress test showed normal myocardial perfusion imaging. A repeat EKG showed normal sinus rhythm without any significant abnormality. *PAGEID* 570. Dr. Sahu attributed plaintiff's dyspnea to plaintiff's smoking. *Id.*

Barbara Roth, M.D., has been plaintiff's primary care physician. During an April 2009 office visit, Dr. Roth summarized plaintiff's complaints of pain: "Getting in and out of a car increases his pain, so does bending, squatting, stooping or standing for more than 30 minutes." *PAGEID* 584. Dr. Roth noted that plaintiff "walks with an

4

obvious limp." *Id*. She diagnosed "[c]hronic pain," *id*., for which she prescribed morphine and Vicodin. Plaintiff's hypertension, which was untreated at the time, was "uncontrolled." PAGEID 584. Treatment for hypertension was begun and, at plaintiff's next office visit, the condition was characterized as "controlled." PAGEID 583. In June 2009, plaintiff reported that he was trying to find work but Dr. Roth commented that plaintiff "will [n]ever be able to return to a job cutting down trees because of his problems." PAGEID 582. During a July 2009 office visit, plaintiff reported to Dr. Roth that he had been "walking more." PAGEID 580. In October 2009, and January 2010, plaintiff's blood pressure was "at target" or "controlled." PAGEID 586, 589.

    In October 2009, Walter Holbrook M.D., a state agency physician, reviewed the record and opined that plaintiff could frequently lift and carry up to 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk for 6 hours throughout an 8-hour workday and sit for 6 hours throughout an 8-hour workday. PAGEID 555. However, noting plaintiff's continued complaints of numbness and pain, Dr. Holbrook recommended that plaintiff be restricted from the use of left hand controls. Plaintiff's left shoulder tendonitis would limit him to no overhead reaching. *Id*. Moreover, plaintiff should never climb ladders, ropes or scaffolds, nor should he crawl, and he should kneel and crouch no more than occasionally. PAGEID 556. "[F]eeling with the left a[r]m and fingers never." PAGEID 557. Dr. Halbrook also recommended environmental restrictions. PAGEID 558.

    In April 2010, Cindi Hill, M.D., another state agency physician, reviewed the record and concluded that plaintiff had the same

5

exertional limitations as found by Dr. Holbrook (*i.e.*, light exertion), but that plaintiff had fewer postural and non-exertional limitations than were found by Dr. Holbrook. *PAGEID* 598-605. Significantly, Dr. Hill opined that plaintiff would have no restriction in his ability to use his hands. *PAGEID* 601.

**Administrative Hearing**

Plaintiff testified at the administrative hearing that he can perform some housework but that he relies on his adult daughter to vacuum and do the laundry. *PAGEID* 86. He goes grocery shopping. *Id*.

Plaintiff experiences shortness of breath after 5 to 8 minutes of exertion. P*AGEID* 87. Heat and cold weather cause breathing problems. *PAGEID* 94. He spends his days sitting on his porch or lying on his couch. He can sit for no more than 30 minutes before having to stand for 10 minutes. *PAGEID* 88. He can stand for no more than 30 minutes at a time. *PAGEID* 88. If permitted to alternate between sitting or standing, plaintiff estimated that he could stand for a total of only two to three hours during the day. *PAGEID* 89. He can walk on flat ground for only 1 ½ blocks before he experiences shortness of breath. He has difficulty walking on uneven terrain because his leg is unstable. *Id.*

His neck injury causes daily, constant pain. However, he uses only non-prescription pain medication, which is not effective, because of a lack of insurance. *PAGEID* 91. Plaintiff currently uses an inhaler for his breathing problems.

Plaintiff also complained of pain and numbness in his left hand. Although he can lift 20 pounds with his right hand, he cannot do so

6

with his left hand.  *PAGEID* 92.  He cannot lift his left hand much above shoulder level. *PAGEID* 92-93.

At the May 2011 administrative hearing, plaintiff agreed that he has received no medical treatment since February 2010, *PAGEID* 101, initially attributing that fact to a lack of insurance.  *Id*. He later testified, however, that he lost medical insurance in December 2010. *PAGEID* 104.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile who can lift and carry 20 pounds occasionally and 10 pounds frequently, who can occasionally climb ramps and stairs, bend, balance, stoop, kneel and crouch, but who cannot climb ladders, ropes or scaffolds and cannot crawl.  The claimant could not operate hand controls, reach overhead, feel or engage in pushing or pulling with the left upper extremity and who must avoid concentrated exposure to extreme cold, vibrations and irritants such as fumes, odors, dust, gases, chemicals and poorly ventilated spaces. The claimant must avoid all exposure to hazards such as moving machinery and unsecured heights.  The claimant could never operate motor vehicles.  *PAGEID* 107-08.  According to the vocational expert, such a claimant could not perform plaintiff's prior work but could perform other light jobs, such as fast food worker (2.5 million such jobs nationally), cafeteria attendant (134,000 such jobs nationally) and counter attendant (524,000 such jobs nationally). *PAGEID* 109.  However, the vocational expert also testified that a sit/stand limitation would foreclose those jobs, however, "because most light jobs involve being on your feet all the time." *PAGEID* 110. Moreover, assuming that the claimant "can't really feel or grip with

[one] hand, that would seem to indicate to me problems with gross and fine manipulation . . . . And I don't think they could do . . . the jobs that I identified."  *PAGEID* 113.

**Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of status post fracture of the cervical spine and surgery with residual pain/cervicalgia, status post open reduction internal fixation of a left tibia/fibula fracture with residual pain, and chronic obstructive pulmonary disease. *PAGEID* 56.  Finding that plaintiff's impairments neither meet nor equal a listed impairment, the administrative law judge went on to find that plaintiff has the residual functional capacity to perform

> light work as defined in 20 CFR 416.967(b) except he
> may occasionally climb ramps and stairs, bend, balance,
> stoop, kneel and crouch.  He may never crawl or climb
> ladders, ropes or scaffolds.  He may never operate hand
> controls, reach overhead, feel or engage in pushing or
> pulling operations with the nondominant left upper extremity.
> He must avoid concentrated exposure to extreme cold,
> vibration and irritants, such as fumes, odors, dust,
> gases, chemical and poorly ventilated spaces.  He must
> avoid all exposure to hazards, such as moving machinery
> and unsecured heights.

*PAGEID* 61.  In making these findings, the administrative law judge accorded "significant weight" to the opinions of Drs. Holbrook and Hill, the state agency physicians.  *PAGEID* 66.  However, the administrative law judge did not address the fact that Dr. Holbrook restricted plaintiff's ability to use his left arm for pushing, pulling, overhead reaching or feeling, and yet Dr. Hill imposed no restrictions on plaintiff's ability to use his left arm.

Although the residual functional capacity found by the

8

administrative law judge would not permit the performance of plaintiff's past heavy work as a logger, the administrative law judge found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including such jobs as fast food worker, cafeteria attendant and counter attendant. *PAGEID* 67. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act.

**Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058,

9

1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In *his Statement of Errors*, plaintiff complains that the administrative law judge failed to include left shoulder bursitis, tendinopathy in rotator cuff and hypertension in plaintiff's severe impairments, improperly disregarded the opinions of Dr. Khosrovi and Dr. Roth and disregarded the testimony of the vocational expert.

### A. Severe Impairments

As noted *supra*, the administrative law judge found that plaintiff's severe impairments consist of status post fracture of the cervical spine and surgery with residual pain/cervicalgia, status post open reduction internal fixation of a left tibia/fibula fracture with residual pain, and chronic obstructive pulmonary disease. *PAGEID* 56. Plaintiff contends that the administrative law judge improperly characterized bursitis and tendinopathy of the rotator cuff tendons and hypertension as non-severe. *See PAGEID* 58. There is substantial support in the record for the administrative law judge's findings in this regard.

Although a February 2008 MRI of the left shoulder documented subacromial bursitis and bursitis/tendinitis with mild tendinopathy of the rotator cuff tendons, Dr. Khosrovi, plaintiff's treating neurosurgeon, characterized the condition as mild and directed no treatment for the condition. *PAGEID* 486, 488. Moreover, plaintiff's hypertension, which was uncontrolled when untreated, *see PAGEID* 584,

was controlled with treatment.  *See PAGEID* 586, 589.[2]  Because the record establishes that each of these impairments amount to no more than a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," *see Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985) (*quoting Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)), the administrative law judge did not err in failing to include them in the list of plaintiff's severe impairments.

    **B.**    **Evaluation of Opinions of Drs. Khosrovi and Roth**

Plaintiff contends that the administrative law judge improperly rejected the opinions of his treating providers, Drs. Khosrovi and Roth.  Specifically, plaintiff argues that the administrative law judge disregarded Dr. Khosrovi's limitation to lifting less than 10 pounds and precluding all pushing, pulling, bending and twisting.  *Statement of Specific Errors, PAGEID* 635, and Dr. Roth's finding that plaintiff "experiences severe, chronic pain, which is aggravated by getting in and out of a car, bending, squatting, stooping, and standing for longer than 30 minutes," *id*., at *PAGEID* 636.

The opinion of a treating physician must be afforded controlling weight if it is consistent with the evidence and supported by sufficient clinical findings.  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).  However, an ALJ is not bound by such an

---

[2] Plaintiff also makes passing reference to plaintiff's cardiac condition.  *Statement of Specific Errors*, *PAGEID* 634-35.  However, plaintiff's treating

11

opinion if there is substantial medical evidence to the contrary. *Id.* In addition, the ALJ is not bound by a physician's conclusory opinion that a claimant is unable to work. *See Bass v. McMahon, 499 F.3d 506*, 511 (6th Cir. 2007).

Although Dr. Khosrovi temporarily imposed the restrictions referred to by plaintiff shortly after his September 2008 C7 corpectomy, *see PAGEID* 542, 544, the weight restriction was raised to 20 pounds by November 2008 and no other restriction was imposed, *see PAGEID* 546.  Of course, the administrative law judge's residual functional capacity assessment was not inconsistent with Dr. Khosrovi's weight restriction.

Moreover, the administrative law judge did not improperly disregard Dr. Roth's findings regarding plaintiff's limitations by reason of pain.  A fair reading of Dr. Roth's April 2009 office notes makes clear that Dr. Roth was summarizing plaintiff's subjective complaints, not imposing restrictions on plaintiff's ability to function.  *See PAGEID* 584.

In short, the Court concludes that the administrative law judge did not improperly disregard the opinions of plaintiff's treating physicians.

### C. Vocational Evidence

The administrative law judge stated that he relied on the testimony of the vocational expert in finding that plaintiff's residual functional capacity, as found by the administrative law

---

cardiologist, Dr. Sahu, found no significant cardiac abnormality and

12

judge, did not preclude the performance of jobs that exist in significant numbers in the national economy. *PAGEID* 66. However, the residual functional capacity found by the administrative law judge included a limitation on plaintiff's ability to "operate hand controls, reach overhead, feel or engage in pushing or pulling with the left upper extremity . . . ." *PAGEID* 108. Although the vocational expert initially testified that such a claimant could perform the jobs noted *supra*, she later testified that "if the person can't really feel or grip with that hand, that would seem to indicate to me problems with gross and fine manipulation . . . . And I don't think they could do . . . the jobs that I identified." *PAGEID* 113. The administrative law judge made no reference to this portion of the vocational expert's testimony.

The record in this action reflects, at a minimum, an ambiguity in the evidence as it relates to plaintiff's residual functional capacity and its impact on plaintiff's ability to engage in substantial gainful employment. Under these circumstances, the Court concludes that the matter must be remanded to the Commissioner for further consideration of this issue.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that this action be remanded to the Commissioner of Social Security for further proceedings.

If any party seeks review by the District Judge of this *Report*

---

attributed plaintiff's dyspnea to his smoking.  *PAGEID* 570.

*and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

              *s/Norah McCann King*
              Norah M$^c$Cann King
             United States Magistrate Judge

Date February 6, 2013